NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SANDRA B. OJO, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> HUDSON CITY SAVINGS BANK, FSB, *et al.*, <br><br> Defendants. | Civil Action No.: 19-16200 <br><br> **OPINION** |

**CECCHI**, **District Judge.**

This matter comes before the Court on the motions to dismiss filed by defendants Frankel Lambert ("Lambert") (ECF No. 50), New Century Financial Services ("NCFS") (ECF No. 51), Midland Funding LLC ("Midland") (ECF No. 53), BAC Home Loans Servicing, LP ("BAC"), Hudson County Savings Bank, FSB ("HCSB"), Bank of America, N.A. ("BOA"), Manufacturer & Traders Trust Co. ("M&T"), and Countrywide Home Loans Servicing, LP ("Countrywide") (ECF No. 57).[1] *Pro se* plaintiffs Sandra Ojo and Temidayo Ojo ("Plaintiffs") filed an omnibus brief in opposition to the motions to dismiss (ECF No. 63) and Defendants filed replies in support (ECF Nos. 64–67). Plaintiffs thereafter filed a sur-reply in further opposition to the motion. ECF No. 69. This matter is decided without oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, Defendants' motions are granted.

**I.      BACKGROUND**

This action arises out of a prior state court foreclosure action (the "Foreclosure Action"), involving Plaintiffs' property located at 120 Chestnut Street, New Jersey (the "Property"). ECF

---

[1] The moving defendants listed above are collectively referred to as "Defendants" throughout this Opinion.

1

No. 49-2 at 4.  In January 2003, Plaintiffs executed a mortgage on the Property with SIB Mortgage Corp. Id.  In August 2006, Plaintiffs refinanced the Mortgage with Countrywide. Id.  In May 2007, Plaintiffs again executed a mortgage on the Property with JP Morgan Chase Bank. Id.  Thereafter, in 2008 BOA acquired Countrywide through a merger. Id. at 4–5. Near the end of 2008, Plaintiffs began experiencing financial difficulties and communicated their need to modify the mortgage obligations with Countrywide. Id. at 5.  Countrywide allegedly told Plaintiffs to miss three mortgage payments in order to qualify for the Home Affordable Modification Program ("HAMP"), a government program established to prevent foreclosures implemented in 2008. Id. Plaintiffs, in reliance on Countrywide's advice, then missed three mortgage payments from January to March 2009, before attempting to repay the entire balance owed. Id. at 6.  Countrywide allegedly rejected Plaintiffs' payment and again encouraged Plaintiffs to apply to HAMP. Id.

    Plaintiffs maintain that this scheme went on for years, as from 2009 through April 2016 Countrywide and BOA "engaged in the same type of promise, acceptance, and pretense of processing and consideration of Plaintiffs' HAMP applications." Id.  In June 2009, foreclosure proceedings were brought against Plaintiffs for their failure to make required mortgage payments on the Property. Id. at 7.  This foreclosure action was eventually dismissed in 2013 for failure to prosecute. Id. at 8.  A second foreclosure action was initiated in 2015. Id. at 10.  Judgment was entered against Plaintiffs in the second foreclosure action in August 2015. Id. at 11.  The Property was subsequently sold at a sheriff's sale in May 2016 and Plaintiffs were repeatedly contacted and told they had to vacate the Property. Id. at 12.  Plaintiffs did not vacate the Property, and a strict foreclosure complaint was filed against Plaintiffs that resulted in the Sheriff ejecting the Plaintiffs and changing the locks on the Property in August 2019. Id. at 14.

Plaintiffs allege that the foreclosure actions, sheriff's sale, eviction proceedings, and strict foreclosure complaint were premised upon false information provided to the State Court, involved a conspiracy between Defendants to trick Plaintiffs into missing their mortgage payments, and maintain that the foreclosure actions were hidden from them and that they were not given adequate notice of these proceedings. Id. at 9–13.

Plaintiffs commenced this action on August 1, 2019, alleging violations of the Truth in Lending Act (15 U.S.C. § 1601, *et seq.*) and alleging accounting discrepancies, chain of title discrepancies, and proof of service discrepancies with respect to their mortgage and Property. ECF No. 1. Plaintiffs have repeatedly sought, and been granted, leave to amend the pleadings in this matter and are now proceeding with their second amended complaint ("SAC"). ECF No. 49-2.[2] The SAC lists eleven causes of action: violation of 18 U.S.C. § 1692 (Racketeer Influenced and Corrupt Organizations ("RICO")), violation of 18 U.S.C. § 1964(d) (also RICO), violation of 42 U.S.C. § 1983 (civil action for deprivation of rights), violation of 42 U.S.C. §1985(2) (conspiracy to interfere with civil rights), violation of 42 U.S.C. § 1986 (action for neglect to prevent conspiracy to interfere with civil rights), violation of 15 U.S.C. § 1601, *et seq.* (Truth in Lending Act), violation of 15 U.S.C. § 1672, *et seq.* (Consumer Credit Protection Act), violation of 15 U.S.C. § 1691, *et seq.* (the Equal Credit Opportunity Act), intentional infliction of emotional distress, defamation, and violation of the New Jersey Consumer Fraud Act.[3] Id. at 15–20. The

---

[2] Plaintiffs initially filed a second amended complaint on January 15, 2020 (ECF No. 39), but subsequently notified the Court that the document filed on January 15, 2020 was not the correct document, and filed a corrected document on February 7, 2020 (ECF No. 49-2). The Court has reviewed both submissions and will treat the treat the later filed document as the operative complaint in this matter.

[3] Plaintiffs also list additional New Jersey state law claims under this eleventh cause of action: malicious prosecution, civil conspiracy, abuse of process, trespass, replevin, negligence, negligent misrepresentation, gross negligence, interference with contractual agreement, fraudulent

SAC requests declaratory relief stating that Defendants conspired, in violation of numerous laws, to deprive Plaintiffs of the Property and seeks compensatory damages not less than $5,000,000, damages for emotional distress/pain and suffering, attorneys' fees, and any other relief deemed just and proper by the court. Id. at 22–23.

Defendants have raised both independent and overlapping arguments for dismissal of the SAC. The Court will summarize each Defendant's arguments in turn.

Defendant Lambert argues that Plaintiffs lack standing to sue because the only allegations contained in the SAC against Lambert are that Lambert was the law firm that filed a foreclosure complaint in New Jersey State Court in 2009 and that foreclosure complaint was eventually dismissed for lack of prosecution. ECF No. 50-1 at 5.  Lambert also states that Plaintiffs' claims against it are untimely as Lambert was not named in this matter until 2020, and that Plaintiffs have failed to properly allege their claims against Lambert. Id. at 6–24.

Defendant NCFS argues that Plaintiffs' claims against it are barred under the *Rooker-Feldman* doctrine, constitute an impermissible collateral attack on a final judgment, are untimely, and fail to state a claim upon which relief can be granted. ECF No. 51-2 at 1.  Plaintiffs allege that NCFS improperly obtained a judgment against Plaintiffs in a collection matter in 2011 and placed a lien on the Property.  NCFS maintains that because the collection judgment was satisfied in July 2015 and the State Court indicated as such, Plaintiff may not challenge that final judgment before this Court. Id. at 8.

Defendant Midland is alleged to have improperly obtained judgment liens against Plaintiffs' interest in the Property in October 2010 and March 2012 and to have injured Plaintiffs

---

concealment, unjust enrichment, and extortion. These additional claims are listed without any allegations, factual support, or elaboration.

4

by failing to discharge its lien claim on the Property after satisfaction of Midland's judgments. ECF No. 49-2 at 8–9.  Midland argues that Plaintiffs' claims against it are barred under the *Rooker-Feldman* doctrine as they seek to overturn state court judgments entered in 2010 and 2012, that Plaintiffs' claims are barred by New Jersey's entire controversy doctrine, that Plaintiffs have failed to properly state a claim against Midland, and that Plaintiffs' claim are time barred. ECF No. 53-1 at 9–22.

Defendants BAC, HCSB, BOA, M&T, and Countrywide (together, the "BAC/Countrywide Defendants) argue that the Plaintiffs' claims are barred under the *Rooker-Feldman* doctrine, the entire controversy doctrine, and collateral estoppel, as "[e]ach and every cause of action asserted by Plaintiffs seeks to collaterally attack the Final Judgment entered against Sandra Ojo, on August 4, 2015, in a foreclosure action . . . and the Final Judgment entered against Plaintiffs in a related strict foreclosure action. ECF No. 57-5 at 2.  The BAC/Countrywide Defendants further argue that all of Plaintiffs' claims are barred by statutes of limitation or fail to state a claim upon which relief can be granted. Id.

## II.     DISCUSSION

As a majority of the Defendants challenge this Court's subject matter jurisdiction over the SAC, the Court will begin by considering Defendants' jurisdictional challenges to Plaintiffs' claims under the *Rooker-Feldman* doctrine. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) ("[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the cause.").

*Rooker-Feldman* is a preclusion doctrine, which "'strips federal courts of jurisdiction over controversies that are essentially appeals from state-court judgments.'" *Duffy v. Wells Fargo Bank, N.A.*, No. 16-4453, 2017 WL 236196, at *4 (D.N.J. May 31, 2017) (citation omitted).  "It is

5

implicated when, in order to grant the federal plaintiff the relief sought, the federal court must determine that the state court judgment was erroneously entered or must take action that would render the judgment ineffectual." *In re Madera*, 586 F.3d 228, 232 (3d Cir. 2009) (citation and quotation marks omitted). Thus, *Rooker-Feldman* applies in "[1] cases brought by state-court losers [2] complaining of injuries caused by state-court judgments [3] rendered before the district court proceedings commenced and [4] inviting district court review and rejection of those judgments." *Malhan v. Sec'y United States Dep't of State*, 938 F.3d 453, 458 (3d Cir. 2019) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

As a threshold matter, the Court finds that the first requirement is met, as Plaintiffs were the losing party in the prior state court actions involving NCFS, Midland, and the BAC/Countrywide Defendants.[4] Moreover, the third requirement is also met, as Plaintiffs commenced this action on August 1, 2019, and the relevant state court judgments were entered in 2010 (Midland collection judgment), 2011 (NCFS collection judgment), 2012 (second Midland collection judgment), 2015 (BAC/Countrywide foreclosure judgment), and 2018 (strict foreclosure judgment). Id.; *see Damiani v. Wells Fargo*, No. 16-8484, 2018 WL 1731347, at *5 (D.N.J. Apr. 10, 2018) (finding the first and third *Rooker-Feldman* requirements were satisfied where a final foreclosure judgment in state court action was entered against the plaintiff before he commenced the federal action); *see also Ezell v. JPMorgan Chase Bank Nat'l Ass'n*, No. 18-1407, 2020 WL 525899, at *4 (D.N.J. Jan. 31, 2020).

---

[4] *See* ECF No. 51-1, Ex. B (granting summary judgment to NCFS on September 2, 2011), ECF No. 49-3, Exs. G and I (judgments entered in favor of Midland on October 25, 2010 and March 16, 2012), ECF No. 19-1, Exs. C and K (final judgment order in foreclosure action entered June 26, 2015 and final judgment order in strict foreclosure action entered December 3, 2018).

The second and fourth requirements, which are ordinarily considered together, require that the federal action be "so inextricably intertwined [with the state court final judgment] that a 'favorable decision in federal court would require negating or reversing the state-court decision.'" *Duffy*, 2017 WL 2364196, at *7 (citing *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 170 n.4 (3d Cir. 2010)).

Plaintiffs' SAC consists of disjointed factual allegations and conclusory statements of Defendants' alleged violations of federal, state, and common law. Although it is at times difficult to discern the basis for Plaintiffs' claims, the gravamen of the complaint appears to be that Defendants obtained judgments against Plaintiffs through fraud, conspiracy, and misrepresentations that led the New Jersey state court to enter collection and foreclosure judgments against Plaintiffs. *See* ECF No. 49-2 at 21 ("Defendants willfully and knowingly represented to the State Court and fraudulently asked for judgment on an amount of debt that were not legally owing to them by the Plaintiffs. The Defendants and their agents, servants, and/or employees knew or must have known the material nature of the facts that they willfully concealed from Plaintiffs and those that they willfully presented to the State Court against the Interest of Plaintiffs at the time these representations were made."). Plaintiffs specifically seek a declaration from this Court that Defendants conspired to deprive Plaintiffs of notice of pending lawsuits, that the Countrywide Defendants breached their respective mortgage agreements, and that Defendants unlawfully conspired to obtain judgments against Plaintiffs. Id. at 22. Plaintiffs argue their claims do not satisfy the second and fourth requirements of the *Rooker-Feldman* doctrine because they are complaining of Defendants' fraudulent conduct rather than the state court judgments. *See* ECF No. 63 at 8.

The Court is not persuaded by this argument. Ultimately, Plaintiffs are seeking a ruling from this Court that Defendants harmed Plaintiffs by obtaining state court judgments against them that led to collection liens and foreclosure on the Property. This is precisely the type of litigation that the *Rooker-Feldman* doctrine is meant to preclude. *See Ezell*, 2020 WL 525899, at *5 ("With respect to the second and fourth requirements, the Third Circuit has found that the *Rooker-Feldman* doctrine applies when a mortgagor challenges the judgment in his or her New Jersey foreclosure action."); *see also, Martinez v. Bank of Am., N.A.*, No. 15-8926, 2016 WL 1135441, at *4 (D.N.J. Mar. 22, 2016) (citation omitted) ("This type of action is exactly what *Rooker-Feldman* is meant to prevent: an attempt to invalidate the final judgment of foreclosure . . ."). Thus, *Rooker-Feldman* bars this Court's exercise of subject matter jurisdiction over Plaintiffs' claims. The Court also notes that Plaintiffs' claims of fraud are unsupported by factual allegations. Plaintiffs simply reiterate that the state court judgments were obtained by fraud, but do not explain how New Jersey state court judges were duped into entering judgments incorrectly on five different occasions. This legal conclusion, unsupported by factual allegations, is inadequate to meet the high bar needed to question these prior, final, state court proceedings. *See, e.g., U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016) (quoting *In re Rockefeller Ctr. Props., Inc. Securities Litig.*, 311 F.3d 198, 217 (3d Cir. 2002) ("A plaintiff alleging fraud must therefore support its allegations 'with all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and how of the events at issue.'").

To the extent Plaintiffs' claims are not barred under the *Rooker-Feldman* doctrine because they are somehow not challenging the underlying state court judgments (a distinction the Court fails to see at this time), the claims face additional hurdles that require their dismissal.

Defendant Lambert argues that Plaintiffs' lack standing because they have failed to allege an injury stemming from Lambert's involvement in the initial foreclosure action that was dismissed for failure to prosecute. ECF No. ECF No. 50-1 at 5. Plaintiffs do not address this point in their opposition and the Court agrees with Lambert that the SAC fails to allege an injury stemming from Lambert's involvement in a foreclosure proceeding that did not progress and was dismissed for failure to prosecute. *See* ECF No. 65 at 4 ("The Plaintiffs' alleged harm of having their property sold at sheriff's sale and the alleged harm that occurred from a subsequent strict foreclosure action have no relation to the dismissed 2009 foreclosure action. The 2015 foreclosure action that resulted in the sheriff's sale and the subsequent strict foreclosure action were filed years after any alleged involvement of Frenkel Lambert and both would have occurred whether or not the 2009 foreclosure action was filed."). As Plaintiffs have failed to allege any injury stemming from Lambert's conduct in the SAC, the claims against Lambert must be dismissed for lack of standing. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, (1992) ("There must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.")[5]

A number of the Defendants also assert that the claims in the SAC must be dismissed because they are untimely. The majority of Plaintiffs' claims are governed by statutes of limitations ranging from 1 year to 4 years,[6] and Defendants argue that the statutes of limitations

---

[5] The Court further notes that the majority of Plaintiffs' claims appear inadequately pled under Rule 8 or Rule 9(b) of the Federal Rules of Civil Procedure as Plaintiffs repeatedly state that Defendants conspired or colluded, but do not provide factual allegations to plausibly support such allegations, especially in light of the state court judgments that arguably validated Defendants' actions.

[6] **1.** 18 U.S.C. § 1692 - 4 years; **2.** 18 U.S.C. § 1964(d) - 4 years; **3.** 42 U.S.C. § 1983 – 2 years; **4.** 42 U.S.C. §1985(2) – 2 years; **5.** 42 U.S.C. § 1986 – 1 year; **6.** 15 U.S.C. § 1601, *et seq.* – 3

on these claims must have begun, at the very latest, when Plaintiffs became aware that the Property was going to be sold at a sheriff's sale and retained counsel in January 2016. *See* ECF No. 57-5 at 7; ECF No. 49-2 at 11.  Defendants thus argue that Plaintiffs' claims are untimely, because the SAC was filed on February 7, 2020, more than four years after Plaintiffs' statute of limitations clock began to run. ECF No. 57-5 at 7.  Plaintiffs argue that their claims should not be barred as untimely under a theory of equitable tolling because they were prevented from discovering the basis for claims by Defendants' false promises. *See* ECF No. 63 at 7 ("Despite engaging in the process of mortgage modification with the Plaintiffs, the Defendants went to the state court, fraudulently and secretly filed foreclosure complaint against the Plaintiffs in 2009."); id. at 15 ("Defendants repeatedly misrepresented material facts deceiving Plaintiffs pertaining to the status of their mortgage contract by making false promise that they were processing modification and/or short sale and forbearing foreclosure.  Whereas, the Defendant was secretly pursuing foreclosure action.").

     Plaintiffs' theory of equitable tolling is unavailing in light of the fact that they are complaining of injuries sustained from state court litigation that was publicly filed and required service on Plaintiffs to proceed to judgment. *See, e.g.*, ECF No. 49-3 at 41, 49, 56, 59, 81 (various exhibits showing service was made in connection with state court proceedings).  At the very least, the SAC acknowledges that Plaintiffs became aware of a Sheriffs' Sale of the Property in January 2016. ECF No. 49-2 at 11.  Based on the record before the Court, it appears that Plaintiffs should have been aware of the basis for their claims by January 2016, meaning that

---

years; **7.** 15 U.S.C. § 1672, *et seq*. – No private cause of action exists; **8.** 15 U.S.C. § 1691, *et seq.* – 2 years; **9.** intentional infliction of emotional distress – 2 years; **10.** defamation – 1 year. Plaintiffs' additional claim under the New Jersey Consumer Fraud Act, with a six-year statute of limitations, is discussed below in footnote 7.

all claims with statute of limitations of four years or less are barred as the SAC was filed in February 2020. Insofar as Plaintiffs' claims are not time-barred, they fail for the additional reasons discussed above.[7]

While the current complaint suffers from the numerous deficiencies identified in this Opinion, to the extent Plaintiffs can cure such deficiencies, Plaintiffs may file a third amended complaint. Plaintiffs are instructed to adhere strictly to the Federal Rules of Civil Procedure, namely Rule 8(a) which requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief" and Rule 9(b) which requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Additionally, Plaintiffs are instructed to discuss each individual claim in its own separate section, to identify which specific Defendants are included in each claim, and to remove plainly inapplicable claims, such as the initial claim for malicious prosecution which Plaintiffs concede is improper. ECF No. 63 at 22; *see also Bass v. Howard*, No. 19-17077, 2020 WL 1332007, at *4 (D.N.J. Mar. 23, 2020) ("Plaintiff failed to provide factual support for any of these additional claims in the FAC. Merely listing causes of action, without also including the necessary elements, does not even rise to the level of conclusory."); *8 Erie St. JC LLC v. City of Jersey City*, No. 19-CV-9351, 2020

---

[7] Plaintiffs' New Jersey Consumer Fraud Act, for instance, has a six-year statute of limitations. As discussed above, all of Plaintiffs' claims, including their New Jersey Consumer Fraud Act claims, are barred under the *Rooker-Feldman* doctrine and unsupported by factual allegations as they consist of conclusory references to a fraudulent conspiracy spanning a number of years between various private and state actors. Such references fail to meet the heightened pleading requirement applicable to fraud claims in federal court. *See Frederico v. Home Depot*, 507 F.3d 188, 202 (3d Cir. 2007). The BAC/Countrywide Defendants also argue that Plaintiffs' New Jersey Consumer Fraud Act claim is time-barred under the applicable six-year statute of limitations as "Plaintiffs appear to premise their CFA claim on a purported statement by Countrywide Home Loans Servicing, LP or BAC Home Loans Servicing, LP to Sandra Ojo that she should purposefully miss three (3) mortgage loan payments to become eligible for a HAMP loan modification. This statement took place on or about the end of 2008. . . . Plaintiffs did not commence their CFA claim within six (6) years of 2008." ECF No. 57-5 at 17.

WL 2611540, at *3 (D.N.J. May 21, 2020) ("Plaintiff falls short of the requirement that it plead specific facts as to each Defendant's involvement in the alleged wrongdoing. Instead, Plaintiff frequently groups the Defendants together and simply alleges that collectively, Defendants acted improperly. . . . Without sufficient factual allegations pertaining to each Defendant's wrongdoing, the Complaint is not plausibly pled.").

### III.     CONCLUSION

For the reasons stated above, Defendant' motions to dismiss (ECF Nos. 50–51, 53, and 57) are **GRANTED** and the SAC (ECF No. 49-2) is **DISMISSED WITHOUT PREJUDICE**. An appropriate Order accompanies this Opinion.

**DATE:** November 19, 2020

**CLAIRE C. CECCHI, U.S.D.J.**